# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| MARIA SOCORRO MARTINEZ,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 13-1006 (SH)<br><br>MEMORANDUM DECISION AND ORDER |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's applications for Disability Insurance Benefits and for Supplemental Security Income. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings (Brief with Points and Authorities in Support of Plaintiff's Complaint; Defendant's Brief with Points and Authorities in Opposition to Plaintiff's

Requested Relief ["Defendant's Brief"]), and the defendant has filed the certified transcript of record. After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed and remanded.

On September 23, 2009, plaintiff Maria Socorro Martinez filed applications for a period of disability and Disability Insurance Benefits and for Supplemental Security Income, alleging an inability to work since September 11, 2009, due to shoulder pain, left arm pain, diabetes, a dislocated hip, and high blood pressure. (See Administrative Record ["AR"] 10,153-61, 189, 206-11). On January 6, 2012 (following a hearing on December 7, 2011), an Administrative Law Judge ("ALJ") determined that plaintiff had the following severe impairments -- diabetes with peripheral neuropathy in the bilateral feet, hypertension, degenerative disk disease of the lumbar spine, a left shoulder rotator cuff tear, obesity, recurrent genital herpes, bacterial vaginosis, pervascular and periadnexal dermatitis of the vulva, and dislipedemia -- but found that plaintiff was not disabled within the meaning of the Social Security Act. (See AR 10-22).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (see AR 1-3), plaintiff filed the present action in this Court.

Plaintiff makes two challenges to the ALJ's Decision. Plaintiff alleges that: (1) the ALJ failed to properly reject plaintiff's credibility; and (2) the vocational expert's testimony did not constitute substantial evidence of the availability of a significant number of jobs in the national economy.

For the reasons discussed below, the Court finds that plaintiff's first claim of error has merit. Since the matter is remanded for further proceeding based on plaintiff's first claim of error, the Court will not address plaintiff's second claim of error.

## DISCUSSION

### ISSUE NO. 1:

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for finding plaintiff not credible in the assessment of plaintiff's Residual Functional Capacity ("RFC").[1] Defendant argues that the ALJ provided valid reasons for finding plaintiff not credible.

In a Disability Report, plaintiff complained of diabetes, a dislocated hip and high blood pressure. Plaintiff stated she could not stand more than five minutes because she became dizzy as a result of her high blood pressure. (See AR 210-16).

At the administrative hearing, plaintiff testified that she had not worked since September 11, 2009. She worked as a caretaker for handicapped persons -- bathing, feeding, cooking, transferring, and cleaning the house – until she dislocated her left shoulder in a car accident in June 2005. (She had a rotator cuff tear, but did not get surgery due to lack of money. She still has problems with that shoulder when it is cold. She can reach up with that shoulder and grab something off a high shelf.) She subsequently worked for a company called Vacation Marketing, and applied for other jobs but was unable to work because she could not lift very much. (See AR 41-44, 59-60).

---

[1] The RFC is the most a claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a).
  The ALJ found that plaintiff had the RFC to light work, as follows: plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently; plaintiff can stand and/or walk for 6 hours out of an 8-hour workday with regular breaks; plaintiff can sit for 6 hours out of an 8-hour workday with regular breaks; plaintiff can occasionally push and/or pull with the left upper extremity; plaintiff is unlimited with respect to pushing and/or pulling with the right upper extremity; plaintiff can occasionally climb ramps or stairs; plaintiff can occasionally balance, kneel and crouch; plaintiff can frequently stoop; plaintiff can occasionally reach and reach overhand with the left upper extremity; plaintiff is not limited with respect to the right upper extremity; plaintiff could use a hand-held device for uneven terrain and prolonged ambulation; plaintiff can occasionally use foot petals bilaterally; but plaintiff is precluded from crawling, from climbing ladders, ropes and scaffolds, and from concentrated exposure to moving hazardous machinery and unprotected heights. (See AR 14-15).

Plaintiff testified she has tingling in both her feet and her arms, and she has pain in her left hip. For her diabetes she has taken insulin twice a day for three months, she takes her blood sugars four times a day, and she takes Metformin twice a day. She eats only twice a day (she does not get hungry), even though she is supposed to eat three meals and a snack every day. Although she takes medication, monitors her blood sugars, exercises and watches what she eats, nothing makes her feel better. For her neuropathy, she takes Neurontin once a day, even though her records state she takes it three times a day. She does not have side effects from her medications because she takes them with food. (See AR 45-49, 57-59, 61-63).

Plaintiff testified she lives in a house with her children's godmother, the godmother's husband, and the godmother's son. She bathes every day, but she is scared to bathe because she falls daily. (She fell the week before and one year earlier, but did not hurt herself.) She always lays down; she cannot stand more than two minutes. She cleans her room once in a while. She does her laundry at the laundrymat (she has not done her laundry for one month due to lack of money), and she shops for food using the cart. She exercises by walking half an hour five days a week. Using a cane, which a doctor prescribed for her a year and half earlier, she walks to the store, to the doctor, and once a week to a local restaurant to meet one of her children (who lives in a foster home nearby; her other child lives in a foster home in Orange County). She cannot walk too far due to numbness in her feet and shortness of breath. She takes the bus to go to the doctor once every three weeks. She watches television all day. She does not drive or go to the movies. She does not have any friends, and her sister lives in Orange County. (See AR 44-45, 48-57, 61-62).

After discussing plaintiff's testimony (see AR 15-16), the ALJ stated:

> The undersigned finds the claimant's allegations concerning the intensity, persistence and limiting effects of her symptoms are partially credible. The

claimant alleged she is unable to stand up for more than two minutes; and frequently lies down due to pain (Testimony). However, the claimant acknowledged that she performed activities including the following: grocery shopping, cooking, household chores, laundry, visiting with her daughter on a weekly basis, watching television, and taking the bus (Testimony). The claimant's self-reported activities of daily living appear to be inconsistent with her alleged symptoms and limitations. Moreover, the physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment.

The medical evidence of record reveals the claimant frequently failed to attend numerous doctors' appointments, including appointments with gynecology, mammography, ophthalmology, and the diabetes clinic (Ex. 12F, 17F). Additionally, the medical evidence of record reveals the claimant does not always follow her doctors' treatment and medication recommendations. The claimant's physician's noted that the claimant was not compliant with her blood pressure medications (Ex. 17F, p.6). The claimant also acknowledged she was off her blood pressure medication for weeks (Ex. 17F, p.33). Additionally, the record shows that at times claimant and reported she was not checking her blood sugar (Ex. 17F, p.7, 32-33). This evidence is suggestive of a possible unwillingness on the claimant's part to do that which is necessary to improve her condition. It may also be an indication that her symptoms are not as severe as she alleges.

The undersigned finds the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, but not to the extent alleged. The undersigned finds that claimant's allegations concerning the intensity, persistence and limiting effects of her symptoms are only

credible to the extent they are consistent with the above residual functional capacity assessment. (AR 16).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the pain. Smolen v. Chater, 157 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating clear and convincing reasons for doing so. Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). "[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion." Bunnell v. Sullivan, supra.

Here, substantial evidence does not support the ALJ's finding that plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms was only partially credible. None of the three reasons given by the ALJ provided a sufficient basis for partially rejecting plaintiff's testimony.[2]

The first reason given by the ALJ -- inconsistencies between plaintiff's testimony and conduct -- was inadequate. Plaintiff's testimony that she was unable to stand up for more than two minutes and always lies down (AR 44), in context, was plaintiff's frustration with her general physical condition, and therefore was not be totally

---

[2] The Court will not consider reasons for finding plaintiff not fully credible (i.e., an inconsistency between plaintiff's testimony that she is not able to stand for more than two minutes and her walking for 30 minutes; a "a conservative course of treatment," lack of objective medical evidence, see Defendant's Brief at 4-6) that were not given by the ALJ in the Decision. See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 US 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

inconsistent with her testimony that she performed daily activities such as walking regularly, grocery shopping, cooking, cleaning, laundry, visiting with her daughter on a weekly basis, and taking the bus (AR 50-51, 54-56).

The second reason given by the ALJ -- plaintiff's ability to perform daily activities such as grocery shopping, cooking, cleaning, laundry, visiting with her daughter on a weekly basis, and taking the bus -- did not support the ALJ's credibility finding. Such activities not inconsistent with plaintiff's ability to perform full-time work. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick v. Chater, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility"); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987).

The third reason given by the ALJ -- plaintiff's failures to attend doctors' appointments and to follow her doctors' treatment and medication recommendations, and plaintiff's refusal to take medication -- also was improper. Although the failure to seek treatment or follow a prescribed course of treatment may serve as an appropriate basis for making a credibility determination, see Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)("Another relevant factor may be 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'"); 20 C.F.R. § 404.1530(a), (b) and 20 C.F.R. § 416.930(a), plaintiff was not asked to explain why she did not attend appointments, follow treatment and medication recommendations, or take certain medication. See Social Security Ruling 96-7P ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that

the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.").

Since the ALJ failed to provide clear and convincing reasons for partially rejecting plaintiff's testimony, this case should be remanded. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

## ORDER

For the forgoing reasons, the decision of the Commissioner is reversed and remanded for further proceedings, pursuant to Sentence 4 of 42 U.S.C. § 405(g).

DATED: January 9, 2014

/s/ Stephen J. Hillman

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE